***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris with minor modifications.
 *********** *Page 2 
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. This claim involves an alleged left ankle/foot injury with an alleged injury date of on or about February 17, 2005.
2. All parties are properly added and before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and of the subject matter.
3. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of any parties.
4. An employee-employer relationship existed at the time of Plaintiff's alleged injury.
5. Defendant-Employer regularly employed three or more employees at the time of the alleged injury in question.
6. Defendant-Carrier was the carrier on the risk at the time of the alleged injury in question.
7. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
8. At the time of the alleged injury, Plaintiff's average weekly wage was $576.92, with a resulting compensation rate of $384.62.
 *********** EXHIBITS
1. The following documents were accepted into evidence by the Deputy Commissioner as stipulated exhibits: *Page 3 
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Transcript of Plaintiff's recorded statement
 • Exhibit 5: Plaintiff's discovery responses
2. Transcripts of depositions of the following were also received by the Deputy Commissioner post-hearing:
 • Dr. James Taylor
 • Hank Banderveen.
 *********** ISSUES
The following issues are before the Commission:
1. Whether Plaintiff sustained a compensable injury by accident to her left ankle/foot on February 17, 2005;
2. Whether Plaintiff's ongoing left ankle/foot condition is compensable; and
3. To what compensation, if any, is Plaintiff entitled.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 55 years old as of the date of the hearing before the Deputy Commissioner and had been working with Defendant-Employer for 32 years. On February 17, *Page 4 
2005, she was working as the secretary for Hank Banderveen, Defendant-Employer's general manager.
2. Late in the day on February 17, 2005, Plaintiff was assisting Banderveen in his office as he prepared for a trade show. Plaintiff was gathering clipboards off a conference table when she caught her left foot on a chair that had been pulled out from the table and tripped, twisting her left ankle. Plaintiff caught herself and did not fall completely to the floor.
3. When Plaintiff tripped, an audible "pop" emanated from her left foot/ankle. As Banderveen testified, the noise sounded "just like a pencil breaking," and he did not think that the sound came simply from Plaintiff's foot striking the chair. Although Banderveen did not witness the trip because he was not looking at Plaintiff when it happened, he testified that he saw the chair pulled out and that he believes that Plaintiff's account of tripping over the edge of it is true.
4. As Banderveen further testified, following this trip, Plaintiff was in immediate pain and had to sit down in a chair. Banderveen then assisted Plaintiff out of the office and into her car.
5. Although Plaintiff was having pain on the inner portion of her left ankle, she returned to work the next day and continued to work until she underwent surgery in April of 2005.
6. Plaintiff made a formal written report of the incident about one week after it occurred. Plaintiff's supervisors, Banderveen and Production Manager Brian Taylor, although they already knew of the incident and Plaintiff's injury, did not want to handle the matter as a workers' compensation claim. *Page 5 
7. Prior to February 17, 2005, Plaintiff was treating with her family physician, Dr. Taylor, for ongoing left ankle pain and swelling. For example, on February 15, 2005, two days before the incident in this claim, Plaintiff had seen Dr. Taylor, who noted "recurring acute swelling pain without known injury to the (left) ankle" that had occurred over the previous weekend. On this visit, Dr. Taylor noted that Plaintiff had "significant discomfort with flexion and extension of the ankle and with weightbearing." Dr. Taylor also noted that Plaintiff had tenderness about the medial malleolus, which is the inside of the ankle.
8. However, the pain in her left foot/ankle that Plaintiff had from the February 17, 2005 incident was different from the pain she had before the incident.
9. Following the incident, on February 23, 2005, Dr. Taylor referred Plaintiff to an orthopedist, Dr. Michael Glover.
10. Plaintiff presented to Dr. Glover on March 15, 2005, complaining of pain in her left foot that had been ongoing for 6-8 months but had been worse over the previous three weeks "since something popped." Dr. Taylor diagnosed Plaintiff with a ruptured posterior tibial tendon on the left side. The "posterior" refers to the back of the ankle. Dr. Taylor also noted that Plaintiff had mild to moderate adult-acquired flatfoot deformity on the left.
11. As Dr. Taylor testified, tripping, hearing a "pop" and not being able to bear weight immediately afterward are all consistent with a ruptured tibial tendon injury.
12. Plaintiff underwent an MRI on March 29, 2005, and the results confirmed Dr. Glover's diagnosis. As such, Dr. Glover scheduled surgery.
 13. Plaintiff filed a Form 18 dated April 12, 2005. *Page 6 
14. Plaintiff underwent surgery with Dr. Glover on April 14, 2005 for "acute onset of posterior tibial tendon insufficiency left." Dr. Glover's post-operative diagnosis was a left posterior tibial tendon tear.
15. Plaintiff was out of work a few days after the surgery but was paid in full for those days by Defendant-Employer. She then returned to work and remained actively working with Defendant-Employer through the date of the hearing before the Deputy Commissioner.
16. Defendant-Employer did not file a Form 19 until on or about May 27, 2005.
17. Plaintiff has continued to have pain in her left foot/ankle since the surgery, and she has continued treating with Dr. Glover for it. As of January 30, 2006, the last date for which an office note from Dr. Glover is in the record, Dr. Glover noted that Plaintiff did better when wearing a brace but that she continued to have problems with her left foot/ankle.
18. It is unclear, based on Dr. Glover's records, which of Plaintiff's ongoing symptoms, if any, are related to the February 17, 2005 incident and which, if any, are solely related to pre-existing conditions. Dr. Glover was not deposed.
19. Defendants denied Plaintiff's claim via a Form 61 dated November 1, 2005, nearly seven months after Plaintiff filed her Form 18.
20. Plaintiff's appointment with Dr. Glover on March 15, 2005, her MRI on March 29, 2005, her appointments with Dr. Glover on April 4 and April 12, 2005, her surgery on April 14, 2005, and her follow-up appointments with Dr. Glover on April 25, May 9, May 23 and June 6, 2005 were all reasonably required to effect a cure and/or provide relief for symptoms that were directly related to the February 17, 2005 incident.
21. Plaintiff has paid out-of-pocket for deductibles and co-pays related to the treatment set out in Finding of Fact No. 20 above. *Page 7 
22. Dr. Glover has not assigned any PPD rating for Plaintiff's left posterior tibial tendon tear.
23. Plaintiff has not shown any disability related to the February 17, 2005 incident other than the period following her surgery, during which she continued to receive her full salary.
24. Plaintiff's testimony regarding the February 17, 2005 incident and her symptoms is found to be credible.
25. Based on a careful review of the record in this matter, the Full Commission finds that Plaintiff sustained an injury by accident on February 17, 2005, and that the injury by accident significantly or materially aggravated Plaintiff's pre-existing left ankle.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Based on a careful review of the record in this matter, the Full Commission finds that Plaintiff sustained an injury by accident on February 17, 2005, and that the injury by accident significantly or materially aggravated Plaintiff's pre-existing left ankle condition. N.C. Gen. Stat. § 97-2(6); and See Mills v. City of New Bern,122 N.C. App. 283, 468 S.E.2d 587 (1996).
2. Plaintiff is entitled to have Defendants pay for the medical treatment that she has heretofore received for her compensable left posterior tibial tendon tear, said treatment specifically enumerated in Finding of Fact No. 20 above. N.C. Gen. Stat. §§ 97-2(19), 97-25. *Page 8 
3. As to whether Plaintiff's ongoing symptoms, and her treatment with Dr. Glover after the June 6, 2005 appointment, have been causally related to her compensable left posterior tibial tendon tear, given Plaintiff's pre-existing left flatfoot deformity, the Commission cannot determine whether such symptoms and treatment are compensable without expert testimony on causation, which is absent on this record. As such, Plaintiff is not entitled to have Defendants provide medical compensation after the June 6, 2005 appointment.
4. During the only period in which Plaintiff was disabled, when she was recovering from her surgery, Defendant-Employer continued her full salary. As such, Defendants are entitled to a full credit for the salary continuation in lieu of any temporary total disability compensation that would have been owed. N.C. Gen. Stat. § 97-42.
5. Should Plaintiff receive a PPD rating for her compensable left posterior tibial tendon tear, she will be entitled to payment for it. N.C. Gen. Stat. § 97-31.
6. For Defendant-Employer's failure to timely report the incident, and for Defendant-Carrier's failure to timely admit or deny Plaintiff's right to compensation, they each should be sanctioned. N.C. Gen. Stat. § 97-18(j).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall reimburse Plaintiff in full for her out-of-pocket expenses incurred for the treatment specifically enumerated in Finding of Fact No. 20 above. Defendant-Carrier should also reimburse Plaintiff's health insurance provider in full for its payments for said treatment. *Page 9 
2. Should Plaintiff desire to pursue further treatment beyond the June 6, 2005 appointment, she should file a new Form 33 Request for Hearing.
3. Should Plaintiff receive a PPD rating for her compensable left posterior tibial tendon tear, Defendants shall pay compensation for said rating to Plaintiff, subject to their right to obtain a second opinion as to the rating. Should a PPD rating become payable, Defendants shall pay 25 percent of the amount directly to Plaintiff's counsel as his fee.
4. As sanctions for their failure to timely comply with their reporting and filing obligations under the Act as set out herein, Defendant-Employer and Defendant-Carrier shall each pay $250.00 to the Commission.
5. Defendants shall pay the costs.
This 14th day of April 2008.
 S/___________________
 CHRISTOPHER SCOTT
 COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1