748 S.E.2d 256

**Carolyn M. NICHOLSON, Claimant, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Employer, and State Accident Fund, Carrier, Appellants.**

Appellate Case No. 2012–206507.

No. 5171.

Court of Appeals of South Carolina.

Heard Feb. 12, 2013.

Decided Sept. 4, 2013.

538

L. Brenn Watson and Zachary M. Smith, both of Wilson, Jones, Carter & Baxley, P.A., of Greenville, for Appellants.

Kathryn Williams, of Kathryn Williams, P.A., of Greenville, for Respondent.

GEATHERS, J.:

South Carolina Department of Social Services (DSS) appeals the Appellate Panel of the South Carolina Workers' Compensation Commission's (the Commission) finding that Carolyn Nicholson sustained compensable injuries to her neck, back, and left shoulder when she fell while walking in a carpeted hallway of her workplace. DSS argues the Commission erred because Nicholson's injuries did not arise out of her employment, as the Workers' Compensation Single Commissioner (Single Commissioner) previously found. We reverse.

**FACTUAL/PROCEDURAL HISTORY**

The facts in this case are undisputed. Nicholson worked as a supervisor in the investigations department of DSS. As a part of her job with DSS, she attended weekly audit meetings to review and update case files. On February 26, 2009, Nicholson was scheduled for an audit meeting, which was held on the lower floor of DSS's building. She grabbed a stack of files and began walking down the hallway to the meeting. While walking down the hallway, Nicholson's shoe scuffed the carpet, and she fell onto her left side. As a result of the fall, Nicholson sustained injuries to her neck, back, and left shoulder.

On January 3, 2011, Nicholson filed a Form 50, alleging she sustained compensable injuries by accident arising out of and in the course of her employment as a result of the fall. Nicholson sought payment for past medical treatment, additional medical treatment for her neck, back, and left shoulder, and temporary total disability benefits from February 26, 2009, to April 13, 2009, the days she was out of work. DSS

and its insurance carrier, State Accident Fund, admitted Nicholson fell at work but denied she sustained compensable injuries by accident arising out of her employment.

A hearing before the Single Commissioner was held on March 16, 2011. At the hearing, Nicholson testified her leg did not give way, and she had no health problems that would cause her to fall. During direct examination, Nicholson was specifically asked if she could offer any opinion as to the cause of her fall, and she answered as follows:

Q. So, what is it that you think caused you to fall?

A. Friction from the carpet.

Q. Did your foot get stuck?

A. Yes, from the friction. As I went to walk, the friction from the carpet just grabbed me and I fell.

Nicholson further testified the hallway had a normal, level, carpeted floor that was free from defect, and there was no debris on the floor. Although Nicholson was carrying ten case files weighing approximately fifteen pounds at the time of her fall, she testified that the files did not cause her to fall.

On April 26, 2011, the Single Commissioner issued an order finding Nicholson did not prove by a preponderance of the evidence that her alleged injuries arose out of her employment. Specifically, the Single Commissioner found Nicholson did not prove a causal connection between her fall and her employment because the fall was "wholly unrelated to her employment with [DSS]." The Single Commissioner found the floor was carpeted, level, and free from defect and, therefore, concluded Nicholson's employment was not a contributing cause because "there was nothing peculiar about the floor at [DSS]'s building that caused her to fall." Additionally, the Single Commissioner determined Nicholson's employment did not contribute to the effect of her fall because the fall "would have carried the same consequences had she fallen on a carpeted floor outside" the DSS building. In support, the Single Commissioner referenced Nicholson's own testimony that the files she carried did not cause or contribute to her fall. Based on these findings, the Single Commissioner denied Nicholson's claim for benefits. The Single Commissioner discussed *Bagwell v. Ernest Burwell, Inc.*, 227 S.C. 444, 88 S.E.2d 611 (1955), in support of his conclusion.

Nicholson appealed to the Commission, which reversed the Single Commissioner's determination that Nicholson did not sustain compensable injuries. The Commission discussed *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 689 S.E.2d 615 (2010), in support of its findings. As to the specific findings, the Commission found that Nicholson's injuries did not result from an idiopathic[1] or unexplained fall because Nicholson identified a specific, non-internal reason for the fall—her shoe scuffing the carpet. The Commission, therefore, concluded that because the fall was not idiopathic, the analysis in *Bagwell* was inapplicable. The Commission also determined "the files did not cause or contribute to [Nicholson's] fall." Nevertheless, the Commission found Nicholson's employment was a contributing cause to her fall, and it was irrelevant that the fall could have happened on any other level, carpeted surface because the fall happened as a result of a risk associated with the conditions under which she worked. As a result, the Commission determined that the fall arose out of Nicholson's employment because "it bore a special relation to her work and the conditions under which she worked," because "she was required to work in a carpeted area." This appeal followed.

**ISSUE ON APPEAL**

Did the Commission err in finding Nicholson sustained compensable injuries arising out of her employment with DSS, thus entitling her to medical and compensation benefits?

**STANDARD OF REVIEW**

The South Carolina Administrative Procedures Act establishes the standard for judicial review of decisions of the Commission. *Pierre*, 386 S.C. at 540, 689 S.E.2d at 618. This court can reverse or modify the Commission's decision if it is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence in the whole record. *Fishburne v. ATI Systems Intern.*, 384 S.C. 76, 85, 681 S.E.2d 595, 599–600 (Ct.App.2009) (citing S.C.Code Ann. § 1–23–380). " 'Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion

---

1. An idiopathic fall arises from some physical or mental condition personal to the claimant. Mark A. Rothstein et al., *Employment Law* § 7.18 (4th ed.2009).

the agency reached.'" *Pierre*, 386 S.C. at 540, 689 S.E.2d at 618 (quoting *Tennant v. Beaufort Cnty. Sch. Dist.*, 381 S.C. 617, 620, 674 S.E.2d 488, 490 (2009)). Despite the significant deference that the substantial evidence standard affords the Commission as to the weight of the evidence on questions of fact, "[w]here there are no disputed facts, the question of whether an accident is compensable is a question of law." *Grant v. Grant Textiles*, 372 S.C. 196, 201, 641 S.E.2d 869, 872 (2007); *see also Langdale v. Harris Carpets*, 395 S.C. 194, 200–01, 717 S.E.2d 80, 83 (Ct.App.2011) (stating a reviewing court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but it may reverse a decision affected by an error of law).

## LAW/ANALYSIS

DSS argues the Commission erred in concluding that Nicholson's injuries arose out of her employment. DSS contends there was no causal connection between Nicholson's injuries and her employment because the carpet on which she fell was level and free from defect, and Nicholson testified that the files she was carrying did not cause her fall.

■ To be entitled to workers' compensation benefits, a claimant must show he or she sustained an "injury by accident arising out of and in the course of employment." S.C.Code Ann. § 42–1–160(A) (Supp.2012). "The two parts of the phrase 'arising out of and in the course of employment' are not synonymous." *Broughton v. South of the Border*, 336 S.C. 488, 496, 520 S.E.2d 634, 638 (Ct.App.1999). Rather, both parts must exist simultaneously before recovery is allowed. *Id.* This court has explained the distinction between the two parts as follows:

An accidental injury is considered to arise out of one's employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. An injury occurs within the course of employment when it occurs within the period of employment, at a place where the employee reasonably may be in the performance of his duties, and while fulfilling those duties or engaged in something incidental thereto.

*Eaddy v. Smurfit–Stone Container Corp.*, 355 S.C. 154, 161, 584 S.E.2d 390, 394 (Ct.App.2003) (internal citations omitted). In this matter, there is no dispute that Nicholson sustained her injuries in the course of her employment, as she was at work at the time of the fall. Thus, the sole issue raised on appeal is whether Nicholson's injuries arose out of her employment.

The term "arising out of" refers to the origin or cause of the accident. *Crosby v. Wal–Mart Store, Inc.*, 330 S.C. 489, 493, 499 S.E.2d 253, 255 (Ct.App.1998). " 'An injury arises out of employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal relationship between the conditions under which the work is to be performed and the resulting injury.' " *Crisp v. SouthCo., Inc.*, 401 S.C. 627, 641, 738 S.E.2d 835, 842 (2013) (quoting *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 518, 466 S.E.2d 357, 358 (1996)). However, an injury is excluded from compensability under the Workers' Compensation Act when it "comes from a hazard to which the workmen would have been equally exposed apart from the employment." *Crosby*, 330 S.C. at 493, 499 S.E.2d at 255. Therefore, a claimant's injury is only compensable if the source of the injury was a risk "peculiar to the work and not common to the neighborhood." *Douglas v. Spartan Mills, Startex Div.*, 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965).

The question of whether an injury arises out of employment is largely a question of fact for the Commission. *Ervin v. Richland Mem'l Hosp.*, 386 S.C. 245, 249, 687 S.E.2d 337, 339 (Ct.App.2009). However, "[w]here there are no disputed facts, the question of whether an accident is compensable is a question of law." *Grant*, 372 S.C. at 201, 641 S.E.2d at 872; *Jordan v. Dixie Chevrolet*, 218 S.C. 73, 77, 61 S.E.2d 654, 656 (1950) ("Upon admitted or established facts the question of whether an accident is compensable is a question of law and this is not an invasion of the fact-finding field of the Commission on the part of the Court."). We acknowledge the substantial evidence standard generally applies in this type of situation. Nonetheless, under *Grant*, when the facts are undisputed, as they are here, we must examine whether the Commission's decision that Nicholson's injuries arose out of her employment was affected by an error of law. Moreover,

"[w]hile the appellate courts are required to be deferential to the full commission regarding questions of fact, this deference does not prevent the courts from overturning the full commission's decision when it is legally incorrect." *Grant*, 372 S.C. at 202, 641 S.E.2d at 872.

On appeal, DSS presents several arguments that the Commission did not apply the correct legal standard in considering whether Nicholson's injuries arose out of her employment. First, DSS argues the Commission erred in finding Nicholson's injuries arose out of her employment in light of the supreme court's decision in *Bagwell*. Additionally, DSS contends the Commission misinterpreted the holding in *Pierre* because the Commission did not focus its analysis on whether Nicholson's injuries were caused by a special condition or hazard. Lastly, DSS argues Nicholson's injuries are not compensable because she was not subjected to a greater degree of risk than the general public due to her employment. We address each of these arguments in turn.

## I.  The Applicability of *Bagwell*.

Initially, DSS contends the Commission erred in finding Nicholson's injuries arose out of her employment in light of the supreme court's decision in *Bagwell*.

In *Bagwell*, our supreme court confronted the issue of an idiopathic fall, wherein an employee suddenly fell backward on a level, concrete floor, lost consciousness, and later died as a result of a subdural hemorrhage. 227 S.C. at 447, 88 S.E.2d at 612. The fall was unexplained because the claimant had died and the only witness could not give a work-related reason for the fall; however, there was a suggestion the fall was caused by a personal health problem of the claimant. *Id.* at 447–50, 452–53, 88 S.E.2d at 612–13, 614–15. Thus, the issue was whether compensation should be awarded when the cause of the fall was unrelated to the employment but the cement floors contributed to the effect of the fall. *Id.* at 452–53, 88 S.E.2d at 614–15. Our supreme court affirmed the circuit court's denial of compensation, stating:

*We are not prepared to accept the contention that, in the absence of special condition or circumstances, a level floor in a place of employment is a hazard.* Cement floors or

other hard floors are as common outside industry as within it. The floor in the instant case did not create a hazard which would not be encountered on a sidewalk or street or in a home where a hard surface of the ground or a hard floor existed.

*Id.* at 454, 88 S.E.2d at 615 (emphasis added).

A special condition was required in *Bagwell* because the fall could not be tied to the employment without otherwise proving a special condition of the employment contributed to the effect of the fall. In Nicholson's case, however, there was a specific, non-personal reason for her fall—Nicholson's shoe scuffing the carpet. Moreover, there was no evidence Nicholson suffered any internal breakdown. Thus, her fall was neither idiopathic nor unexplained.

■ Although the facts of this case are distinguishable from *Bagwell*, our supreme court has made clear that its decision in *Bagwell* was consistent with its previous interpretation of the term "arising out of." *See Bagwell*, 227 S.C. at 454, 88 S.E.2d at 615 (stating the "conclusion [to deny compensation] is more in harmony with the definition which this Court has consistently given the phrase 'arising out' of the employment"). Hence, *Bagwell* reinforces our court's interpretation of the term "arising out of" as requiring a causal connection between the conditions under which the work is required to be performed and the resulting injury. *See Pierre*, 386 S.C. at 548–49, 689 S.E.2d at 622 (finding an employee's injuries from slipping on a wet sidewalk at the employer's on-site housing facility arose out of employment because the source of the injury was a risk associated with the conditions under which the employee was required to live). Therefore, notwithstanding the fact that *Bagwell* is predicated on the existence of an idiopathic condition, the holding in *Bagwell* is instructive in determining whether an employee's injuries from an unexplained, non-idiopathic fall arose out of employment. Accordingly, we find that as in *Bagwell*, the carpet in DSS's building was not a hazard that caused or contributed to Nicholson's injuries in the case at bar. *See Bagwell*, 227 S.C. at 454, 88 S.E.2d at 615 ("We are not prepared to accept the contention that, in the absence of

special condition or circumstances, a level floor in a place of employment is a hazard.").

## II. The Commission's Interpretation of *Pierre*.

Next, DSS argues the Commission misinterpreted the holding in *Pierre* because it did not focus its analysis on whether Nicholson's fall was caused by a special condition or hazard on the carpet.

In *Pierre*, our supreme court addressed whether an employee's injuries from an explained, non-idiopathic fall arose out of employment. Therein, the employee fell on a wet sidewalk outside his employer's on-site housing facility. 386 S.C. at 538, 689 S.E.2d at 617. The Single Commissioner concluded that the employee's injuries did not arise out of employment, stating the following:

> [T]he wet sidewalk where Pierre fell was not different in character or design from other sidewalks, and the risk associated with slipping on the sidewalk was not one uniquely associated with his employment; rather, it was one he would have been equally exposed to apart from his employment.

*Id.* at 539, 689 S.E.2d at 617. The Commission subsequently upheld the Single Commissioner's order and incorporated it by reference. *Id.* The Commission determined the employee did not sustain a compensable injury arising out of his employment because the sidewalk on which he fell was no different in character than other sidewalks. *Id.* However, the supreme court rejected the Commission's finding as not supported by substantial evidence because the accident occurred "as a result of a hazard that existed on the employer's premises, i.e., [the employee] slipped and fell on a wet sidewalk just outside the employees' housing facility." *Id.* at 548, 689 S.E.2d at 622. The court specifically noted that the sidewalk was wet because another person was using the outside sink and the water ran down the sidewalk. *Id.* In addition, the court found that the wet condition of the sidewalk resulted from the employer's placement of the sink and the apparent lack of drainage. *Id.* Based on this evidence, the court concluded that the employee's injury arose out of his employment because the source of the injury, i.e., the wet sidewalk, was a risk associated with

the conditions under which the employee was required to live. *Id.* at 549, 689 S.E.2d at 622–23.

The court in *Pierre* examined whether there was evidence that "the source of the injury was a risk associated with the conditions under which the employees were required to live." *Id.* at 549, 689 S.E.2d at 622. Under the analysis used by the court, the wet condition of the sidewalk was only relevant to determine whether the source of the injury was a risk associated with the employment. *Id.* at 549, 689 S.E.2d at 623 (holding the "[employee's] injury is causally related to his employment in that it was due to the conditions under which he lived, i.e., a wet sidewalk outside of his building"). Thus, *Pierre* recognized that a special condition or hazard can be used as a basis for establishing causation when it is a risk associated with the employment. In the present case, unlike *Pierre*, no special condition or hazard existed on the carpet that caused or contributed to Nicholson's injuries.

### III. The Increased–Risk Doctrine.

Finally, DSS contends Nicholson's fall is not compensable because she was not subjected to a greater degree of risk than the general public due to her employment.

DSS essentially argues that the Commission should have applied the increased-risk doctrine in determining whether Nicholson's injuries arose out of her employment.[2] The in-

---

2. Courts have taken various approaches to interpreting the "arising out of" requirement. *Simmons v. City of Charleston*, 349 S.C. 64, 71, 562 S.E.2d 476, 479 (Ct.App.2002) (citing 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 3.01 (2001)). The three most common lines of interpretation of the phrase "arising out of" are: (1) the increased-risk doctrine; (2) the positional-risk doctrine; and (3) the actual-risk doctrine. *Id.* Under the increased-risk doctrine, an injury arises out of employment when the employment increases the risk of an injury. *Id.* The positional-risk doctrine provides that " '[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.' " *Id.* at 71, 562 S.E.2d at 479 (quoting 1 Larson § 3.05). The actual-risk doctrine ignores whether the risk is common to the public and focuses on whether it is a risk of the particular employment. *Id.* at 71, 562 S.E.2d at 479–80 (citing 1 Larson § 3.04). Under this doctrine, an injury arises out of employment as long as the employment subjected the claimant to the actual risk that caused the injury. *Id.* at 71, 562 S.E.2d at 480.

creased-risk doctrine is the prevalent doctrine in the United States. Mark A. Rothstein et al., *West's Employment Law* § 7.18 (4th ed.2009). However, a majority of courts that have recently addressed the issue of whether compensation should be awarded to employees who have suffered non-idiopathic falls have adopted the positional-risk doctrine, with a minority of jurisdictions employing the actual-risk doctrine. *Id.* Nonetheless, South Carolina has not formally adopted or rejected any of these doctrines, and we do not presume to do so today. *Simmons,* 349 S.C. at 72, 562 S.E.2d at 480. Rather, we must look to our extant jurisprudence to determine the proper standard for evaluating whether Nicholson's injuries from an explained, non-idiopathic fall arose out of her employment.

For an injury to arise out of employment, "a causal connection must exist between the conditions under which the work is required to be performed and the resulting injury." *Ervin,* 386 S.C. at 249, 687 S.E.2d at 339. Our supreme court has explained the requisite causal connection for an injury to arise out of employment as follows:

> [I]f the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. *But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood.* It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

*Douglas,* 245 S.C. at 269, 140 S.E.2d at 175 (emphasis added) (citation omitted); *see also Ervin,* 386 S.C. at 250, 687 S.E.2d at 339–40 (denying compensation because exposure to perfume fragrances while at work was a common causative danger); *Shuler v. Gregory Elec.,* 366 S.C. 435, 448, 622 S.E.2d 569, 576 (Ct.App.2005) (Kittredge, J., dissenting) (proposing to deny

compensation where an employee was driving her own vehicle on a public road because she would have been equally exposed to a car accident outside the employment). Therefore, we must consider whether the Commission correctly applied this legal standard in determining whether Nicholson's injuries arose out of her employment.

Here, the Commission found that *Pierre* foreclosed DSS's argument that Nicholson's injuries were not compensable because it could have happened on any normal, level, carpeted floor. However, under the standard enunciated in *Douglas*, a claimant's injury is only compensable if the source of the injury was a risk "peculiar to the work and not common to the neighborhood." 245 S.C. at 269, 140 S.E.2d at 175 (citation omitted). Therefore, it was not only relevant, but essential that the Commission determine whether there was evidence that the purported causative danger—the carpet—was a risk that was common to the neighborhood and not peculiar to the employment. Accordingly, we find the Commission's decision was affected by an error of law because the Commission did not properly apply the law to the facts of this case.

Although Nicholson was injured while at work, the alleged causative danger, the carpet, is very common. Nicholson testified that the carpet at DSS was level and free from defect and that it did not buckle or move when her foot scuffed it. She further testified her fall could have happened on any level, carpeted surface outside of DSS's building. For example, she admitted that her fall could have happened in the hearing room, which had the same type of carpeting as the DSS building. Moreover, the Commission made no finding that the carpet on which Nicholson fell was distinguishable in character from other carpets. Instead, in finding of fact number ten, the Commission found "[t]he floor on which [Nicholson] fell was carpeted, level, and free from any apparent defect." Based on Nicholson's testimony and the Commission's findings, we cannot conclude that the carpet was peculiar to DSS and not common to the neighborhood.

Furthermore, the Commission did not find that any other condition or obligation of Nicholson's employment contributed to her fall or subsequent injuries. While she was carrying ten files that together weighed fifteen pounds at the time of her fall, Nicholson testified that the files she was carrying did not

cause her fall. Additionally, in finding of fact number nine, the Commission specifically found, "[the] files did not cause or contribute to her fall." The fact that Nicholson's injuries occurred in the carpeted area, in itself, is insufficient to establish the requisite causal connection between her injuries and her employment. *See Bagwell*, 227 S.C. at 454, 88 S.E.2d at 615. ("To say that an injury arises out of the employment in every case where an employee was required to be at the place where the injury occurred would effectively eliminate an essential requirement of the statute."); *Pierre*, 386 S.C. at 549, 689 S.E.2d at 623 ("[M]erely being on an employer's premises, without more, does not automatically confer compensability for an injury."); *Bright v. Orr–Lyons Mills*, 285 S.C. 58, 60, 328 S.E.2d 68, 70 (1985) ("An accidental injury is not rendered compensable by the mere fact that it occurred on the employer's premises. To so hold, would be to abandon the requirement that an accident bear some logical causal relation to the employment.").

■ In this instance, Nicholson had the burden of providing facts that would bring her injuries within the workers' compensation law. *See Jennings v. Chambers Dev. Co.*, 335 S.C. 249, 254, 516 S.E.2d 453, 456 (Ct.App.1999) (stating, "[t]he claimant has the burden of proving facts that will bring the injury within the workers' compensation law, and such award must not be based on surmise, conjecture, or speculation"). Nicholson testified that the sole reason for her fall was that her shoe "frictioned" the carpet. The Commission also identified the "specific" reason for Nicholson's fall was "that she tripped when her foot scuffed or caught in the carpet due to the friction of the carpet against her show." Thus, the only fact connecting Nicholson's fall to her employment is that her injuries occurred while she was working in a carpeted area of DSS's building. The carpet on which Nicholson tripped and fell was not a hazard, a special condition, or peculiar to her employment. Accordingly, based on the findings of fact in the record, Nicholson failed to show a causal connection between her injuries and her employment. Therefore, we conclude Nicholson did not sustain an injury by accident arising of her employment.

## CONCLUSION

Based on the foregoing, we hold Nicholson's injuries did not arise out of her employment and, therefore, are not compensable under our workers' compensation law. Consequently, the decision of the Commission is

**REVERSED.**

LOCKEMY, J., concurs.

FEW, C.J., dissenting.

The events that led to Nicholson's fall are undisputed. However, the factual inferences to be drawn from those events are disputed. The commission's ruling that Nicholson sustained compensable injuries is based on the factual finding that Nicholson's fall arose out of her employment, which in turn is based on factual inferences the commission drew from the events of Nicholson's fall.

I would affirm the commission because there is substantial evidence in the record to support its findings. *See Ervin v. Richland Mem'l Hosp.*, 386 S.C. 245, 248, 687 S.E.2d 337, 338 (Ct.App.2009) (stating "this court will affirm findings of facts made by the [commission] if those findings are supported by substantial evidence"). The evidence shows that while walking to a meeting and carrying a stack of files, Nicholson's foot caught in the carpet due to the carpet's friction against her shoe, causing her to trip and fall. Because Nicholson's workplace was carpeted, the source of her injury was a risk associated with the conditions under which she was required to work. I believe this constitutes substantial evidence to support the commission's factual finding of a causal connection between Nicholson's injury and her employment.

The majority quotes *Douglas v. Spartan Mills, Startex Division*, 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965), "But [the workers' compensation act] excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause.... The causative danger must be peculiar to the work and not common to the neighborhood." (emphasis omitted). However, whether an injury can be fairly traced to the employment and is peculiar to the work and not common to the neighborhood is a factual determination for the commis-

sion, not the courts. *See Shealy v. Aiken Cnty.,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000) ("In workers' compensation cases, the [commission] is the ultimate fact finder."); *Ervin,* 386 S.C. at 249, 687 S.E.2d at 339 (stating "the question of whether an accident arises out of . . . employment is largely a question of fact for the [commission]"). Our task is not to make conclusions based on the evidence before the commission, but to apply our standard of review to the commission's conclusions. Thus, the majority violates our standard of review when it states, "[W]e cannot conclude that the carpet[ ] was peculiar to DSS and not common to the neighborhood." *See* S.C.Code Ann. § 1–23–380(5) (Supp.2012) ("The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact.").

The majority relies on *Grant v. Grant Textiles,* 372 S.C. 196, 641 S.E.2d 869 (2007), for the proposition that in this case we may decide a factual dispute as a matter of law. I disagree that *Grant* applies to this case because in *Grant,* unlike here, there were no disputed factual inferences to be drawn from the events that led to the claimant's injury. It was undisputed that the vice-president of sales for a textile business was traveling to meet with clients when he stopped to remove debris along the highway near the entrance to the site of the meeting and was struck by a passing vehicle. 372 S.C. at 198–99, 641 S.E.2d at 870. The issue in the case was whether, under those undisputed circumstances, his action of removing debris from along the highway arose out of and was in the course of his employment. The commission found it was not, and the court of appeals agreed with the commission's finding that the cause of the accident had no relation to his employment duties. 372 S.C. at 200, 641 S.E.2d at 871. The supreme court disagreed stating,

> The accident would not have happened but for Claimant's business trip . . . to meet his employer's customers. Because removing road hazards was not part of Claimant's job duties, he could have ignored the hazard in the road; however, he chose to remove the hazard to benefit himself, his co-worker father, and his customers. . . . Claimant's act, while outside his regular duties, was undertaken in good

faith to advance his employer's interest and, therefore, was within the course of his employment.

372 S.C. at 201–02, 641 S.E.2d at 872.

Thus, the decision in *Grant* turned on whether the cause of the accident—deciding to remove the hazard from the road—was sufficiently connected to the employment for purposes of satisfying the arising out of and within the scope of prongs. Once the court ascertained the accident would not have happened if the employee had not traveled to the business meeting and stopped to remove the road hazard, all of which was undisputed, the legal conclusion that his actions arose out of and were in the course of employment necessarily followed. Here, despite no dispute about the events of Nicholson's fall, there remains a factual dispute as to whether "frictioning" the carpet of the hallway while walking to a meeting was caused by the employment. The commission made a factual finding that it was because the fall occurred as a result of a risk associated with the conditions under which she worked. That factual finding should be addressed under the substantial evidence standard.